IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| F. PAULA CASTORAN,<br><br>          Plaintiff,<br><br>   v.<br><br>SGT. SCOTT M. POLLAK, et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>14-2531 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

F. Paula Castoran, *Pro Se* Plaintiff
635 West Street, Apt. #511
Ocean City, NJ 08226

Robert Merenich, Esq.
Gemmel, Todd & Merenich, P.A.
767 Shore Road
P.O. Box 296
Linwood, NJ 08221
    Attorney for Defendants Sgt. Scott Pollak, Chief Robert
    James, Northfield Police Department and the City of
    Northfield, NJ.

Anne B. Taylor, Esq.
Assistant United States Attorney
401 Market Street, P.O. Box 2098
Camden, NJ 08101
    Attorney for Defendants Kelly Hutchinson and the United
    States Postal Service

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This is an action by Plaintiff F. Paula Castoran seeking to
hold various federal and municipal defendants liable for a variety
of constitutional and common law tort claims[1] arising out of a

---

[1] The Court notes that Plaintiff's Complaint [Docket Item 1] is
rather obscure as to indicating the particular causes of action
in which she seeks relief. However, pursuant to its duty to construe

series of police encounters that Plaintiff experienced in the City

of Northfield, NJ on September 21, 2012.

Presently before the Court are two distinct motions for

summary judgment, one submitted by "Federal Defendants" Postmaster

Kelly Hutchinson and the United States Postal Service, and the

other submitted by "Municipal Defendants" Sgt. Scott Pollak, Chief

Robert James, Northfield Police Department and the City of

Northfield.

The principal issues to be addressed include (1) whether

Plaintiff's § 1983 claims challenging her arrest and prosecution

are barred by her underlying conviction; (2) whether Federal

Defendants have waived Sovereign Immunity; (2) whether Plaintiff

has exhausted the prerequisite administrative remedies in order to

hold Defendant United States Postal Service liable under the

Federal Tort Claims Act; (3) whether Defendant Northfield Police

Department can be sued separate from Defendant City of Northfield;

(4) whether Defendant Chief Robert James can be held liable under

the theory of *respondeat superior*; (5) whether the summary

judgment record contains sufficient facts that would allow a

reasonable fact finder to find that Defendant City of Northfield

had a custom or policy of discrimination that contributed to the

---

*pro se* Plaintiff's pleadings liberally, the Court finds that
Plaintiff's pleadings were sufficient to avoid *sua sponte*
dismissal. See Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct.
594, 30 L. Ed. 2d 652 (1972); United States v. Day, 969 F.2d 39,
42 (3d Cir. 1992)(In determining the sufficiency of a *pro se*
complaint, the Court must be mindful to construe it liberally in
favor of the plaintiff.).

deprivation of Plaintiff's constitutional rights; (6) whether the summary judgment record contains sufficient facts that would allow a reasonable fact finder to find that Plaintiff's injury was a highly predictable consequence of Defendant City of Northfield's failure to train; (7) whether Plaintiff filed a timely Notice of Tort Claim in accordance to the provisions of the New Jersey Tort Claims Act; (8) whether Defendant Pollak is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims.

For the reasons set forth below, both, Federal Defendants' and Municipal Defendants' motion for summary judgment will be granted.

## II. BACKGROUND

### A. Factual Background[2]

On September 21, 2012, at approximately 11:00 AM, Defendant Kelly Hutchinson, acting postmaster of the Northfield Post Office, went outside the post office to investigate reports and complaints of a person laying down on the ground outside of the post office. [Docket Item 62-1 at ¶ 9.] After observing Plaintiff, outside,

---

[2] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d. 496, 499 n. 2 (D.N.J. 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n. 9 (D.N.J. 2015) (same).

Defendant Hutchinson called the Northfield police to request that they send officers over to ask Plaintiff to leave. (Id. at ¶ 10.) Shortly thereafter, officers arrived, spoke to Plaintiff and advised Defendant Hutchinson that Plaintiff was going to leave the premises. (Id. at ¶ 11.) After the officers indicated that Plaintiff was going to leave, Plaintiff entered the post office and requested to speak to a supervisor. (Id. at ¶ 12.) Concerned about Plaintiff's behavior, Defendant Hutchinson went outside to request additional assistance from the officers who had not yet left the property. (Id. at ¶ 13.) The officers went back inside the post office and asked Plaintiff to leave, yet Plaintiff refused. (Id. at ¶ 16.) Plaintiff believed that she had a right to take a nap on the premises of the Northfield Post Office because it was "Federal property [that] [was] open to the public." [Docket Item 66 at 2.] According to the police report prepared by Sgt. Pollak (Defendant Pollak), when he went back inside the post office, he observed Plaintiff yelling at Defendant Hutchinson. [Docket Item 63-3] However, Plaintiff denies this. [Docket Item 69 at ¶ 19.] Defendant Pollak's police report also indicates that he observed that "there were customers waiting to do business with the post office, and [Plaintiff] was interfering with the business." [Docket Item 63-3 at 17.] Plaintiff was told that she would be arrested if she did not leave. Because she did not leave, the officers arrested Plaintiff. [Docket Item 62-1 at ¶ 22.] Plaintiff was transported to the Northfield Police Department

where she was processed, charged with Defiant Trespass and Disorderly Conduct and released on the same day. [Docket Item 63-1 at ¶ 6-7.]

Not too long after Plaintiff was released, the Northfield Police received a call/complaint regarding a claim that Plaintiff was hitchhiking on Shore Road in Northfield, NJ. (Id. at ¶ 12.) Defendant Pollak sent Officer Geiger to move Plaintiff along. (Id.) Later that day, at approximately 2:17 PM, dispatch received a call regarding a person sleeping along the Northfield bike path. (Id. at ¶ 13.) Evidently, this person was thought to be ill or dead. (Id.) Defendant Pollak responded to this call and went to the scene to find Plaintiff sleeping along the bike path. (Id. at ¶ 18.) Defendant Pollak did not want Plaintiff to remain on the bike path. (Id. at ¶ 20.) After a discussion with Plaintiff, Defendant Pollak offered Plaintiff a ride. Once at the Pleasantville Bus Terminal, Plaintiff refused to exit Pollak's patrol car. (Id. at 28). Plaintiff alleges that Defendant Pollak said that he would rip her from the car, but Plaintiff was never physically removed from the vehicle. According to the Detail for Call Service, the entire incident, from the time of Pollak's response to the call at 2:20 PM, to clearing the call at the Pleasantville Bus Terminal at 2:33 PM, lasted only thirteen minutes. (Id. at 31.) Plaintiff filed criminal charges against Defendant Pollak related to this event, and those charges were dismissed for lack of probable cause. (Id. at 32.)

At the subsequent trial of Plaintiff on the Disorderly Conduct and Defiant Trespass charges in Northfield Municipal Court, Judge Louis J. Belasco heard three days of testimony about the events at the Northfield Post Office on September 21, 2012, on May 27, 2015, June 24, 2015 and August 7, 2015. [Docket Item 62-1 at ¶ 6.) Judge Belasco found the testimony of the officers to be more credible and believable than Plaintiff's testimony. (Id. at ¶ 29.) The Judge found that the first contact between Plaintiff and the police happened outside of the post office when police arrived in response to a call from Postmaster Hutchinson and that Plaintiff got upset because she believed she had a right to rest on postal property because she paid taxes. (Id. at ¶ 30.) The Judge further found that the officers determined Plaintiff should be removed from the premises, to which she responded that she wanted to buy a stamp. (Id. at ¶ 31.) The Judge found that the officers permitted Plaintiff to go inside and that they then entered the building, and observed Plaintiff speaking with a raised voice, demanding to speak to a supervisor. (Id. at ¶ 32.) Moreover, the Judge found that Plaintiff was instructed to leave several times and disregarded those instructions, up to and including the final warning that she would be arrested unless she vacated the building. (Id. at ¶ 34.) The Judge concluded that "while Plaintiff may have been obstreperous, she did not engage in disorderly conduct." (Id. at ¶ 35.) The Judge also concluded that Plaintiff had been given a limited privilege to enter the post

office and buy a stamp, which she did not do. Consequently, the Judge found her guilty of Defiant Trespass. (Id.)

On April 27, 2016, the Superior Court of New Jersey, Atlantic County, upheld Plaintiff's conviction of defiant trespass. [Docket Item 62-8.] Currently, Plaintiff's appeal from the Superior Court disposition is pending before the Appellate Division of New Jersey. (Pl. Dep. 53:7-54:18.)

**B. Procedural History**

On April 17, 2014, Plaintiff commenced a civil action against various federal and municipal Defendants, contending that her constitutional rights were violated when she was arrested on or around September 21, 2012. [Docket Item 1.] Particularly, Plaintiff has characterized her claims as seeking to hold the federal and municipal Defendants liable for malicious prosecution, slander and filing false police reports with law enforcement. [Docket Item 66 at ¶ 4.] On April 27, 2016, Plaintiff consented to the dismissal of her claims against the Municipal Court Administrator for the City of Northfield, Donna Clark. [Docket Item 46.]

On February 13, 2017, Federal Defendants Postmaster Kelly Hutchinson and the United States Postal Service filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). [Docket Item 62.] On February 14, 2017, "Municipal Defendants," Sgt. Scott Pollak, Chief Robert James, Northfield Police Department and the City of Northfield, filed a separate Motion for Summary Judgment

pursuant to Fed. R. Civ. P. 56(c). [Docket Item 63.] Plaintiff opposed both Motions for Summary Judgment. [Docket Items 65-66, 69.]

## III. DISCUSSION

### A. Summary Judgment Standard

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The

non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998)(quoting Anderson, 477 U.S. at 252).

## B. Plaintiff's Claims Against Federal Defendants

Plaintiff seeks to hold Federal Defendants liable for alleged malicious prosecution, slander and filing false police reports with law enforcement . [Docket Item 66 at 4.] The Court has construed Plaintiff's pleadings and subsequent arguments as claims under the Civil Rights Act at 42 U.S.C. § 1983 and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq..

### 1. Constitutional Claims Against Postmaster Hutchinson

As to any constitutional claims against Postmaster Hutchinson, Federal Defendants argue that judgment should be entered for Defendant Hutchinson for the following reasons:

> "(1) Plaintiff remains convicted and thus has not stated, and further is barred from seeking for, a claim of constitutional harm allegedly resulting from her arrest; (2) the factual basis of Plaintiff's conviction was the testimony of the arresting police officers regarding Plaintiff's actions after the officers arrived at the [p]ost [o]ffice, breaking the chain of causation between any action by Defendant Hutchinson and Plaintiff's conviction; and (3) Defendant Hutchinson is entitled to qualified immunity."

[Docket Item 62-2 at 4.]

In order to establish a constitutional claim for malicious

prosecution pursuant to § 1983, a plaintiff must show the following: 1) that the defendant initiated a criminal proceeding; 2) that the criminal proceeding ended in the plaintiff's favor; 3) that the proceeding was initiated without probable cause; 4) that the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) that the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003))

In the present case, Plaintiff's malicious prosecution claim fails on the second prong of the above-listed five-prong test, as Plaintiff remains convicted of one of the two crimes with which she was charged. [Docket Item 62-4 at 3.] (Pl. Dep. 53:7-54:18.) Although Plaintiff is appealing her conviction to the New Jersey Appellate Division, at this juncture, Plaintiff's conviction remains valid. Thus, Plaintiff's malicious prosecution claim must be dismissed. See also Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)(imposing a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence); Deemer v. Beard, 557 F. App'x 162, 166 (3d Cir. 2014).

### 2. Constitutional Claims Against United States Postal Service

Federal Defendants argue that, to the extent that Plaintiff seeks to bring constitutional claims against the United States

Post Office, any such claim fails as a matter of law. citing

Meirzwa v. United States, 282 F. App'x 973, 976-77 (3d Cir. 2008).

As Federal Defendants correctly point out, the United States

Post Service has not waived sovereign immunity for constitutional

claims. The doctrine of sovereign immunity bars all suits against

the United States except where such immunity is explicitly waived

by Congress. United States v. Mitchell, 445 U.S. 535, 538 (1980).

In Meirzwa, the Third Circuit affirmed the dismissal of the

plaintiff's § 1983 claims against the United States "because the

United States sovereign immunity [had] not been waived in a case

such . . . where the [plaintiffs] [sought] damages for decisions

of the District Court in prior actions." 282 F. App'x at 976. The

Court further clarified that the plaintiff's claims could not be

maintained as a constitutional claim under Bivens v. Six Unknown

Named Agents, 403 U.S. 388 (1971). Id. at 977; See also Corr.

Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001)(a plaintiff may

not use Bivens to pursue constitutional claims against the United

States or its agencies); F.D.I.C. v. Meyer, 510 U.S. 471, 486

(1994)(declining to recognize a direct action for damages against

federal agencies).

Because the United States Postal Service, a federal agency,

has not waived its sovereign immunity, Plaintiff's constitutional

claims against the United States Postal Service must be dismissed.

### 3. Tort Claims Against Postmaster Hutchison

Federal Defendants further aver that Plaintiff cannot pursue

a tort claim against Hutchinson, in her individual capacity, because Hutchinson was acting within her scope of federal employment at the time of the alleged tort occurred. [Docket Item 62-2 at 4, n. 2.] Thus, Federal Defendants argue that Plaintiff's tort claim can only proceed against the United States. (Id.)

28 U.S.C. § 2679(d) provides that, upon the certification of the Attorney General that a federal employee was acting within the scope of her employment at the time of the conduct from which the tort claim arises, the claim "shall be deemed to be an action against the United States, and "the United States shall be substituted as the party defendant." Such certification authority has been delegated to the individual United States Attorneys. See 28 C.F.R. § 15.4.

In the present case, the Chief of the Civil Division of the United States Attorney's Office for the District of New Jersey certified that Defendant Postmaster Hutchinson was acting within the scope of her employment at the time of the conduct alleged in the Complaint. [Docket Item 62-10.] Therefore, the Court finds that Plaintiff's tort claims against Defendant Hutchinson may only proceed against the United States. See 28 U.S.C. § 2679(d); Perez-Barron v. United States, 480 F. App'x 688, 691 (3d Cir. 2012) ("[t]he FTCA delineates that a plaintiff may only sue the United States . . ."); 39 U.S.C. § 409(c).

## 4. <u>Tort Claims Against United States Postal Service</u> [3]

As to any tort claims against the United States Postal Service, Federal Defendants argue that judgment should be entered for the United States Postal Service because (1) sovereign immunity has not been waived for intentional torts; and (2) Plaintiff did not exhaust her administrative remedies. Again, Plaintiff has characterized her claims as seeking to hold the federal and municipal Defendants liable for malicious prosecution, slander and filing false police reports with law enforcement. [Docket Item 66.]

Although the FTCA operates as a limited, qualified waiver of the sovereign immunity that otherwise deprives courts of subject matter jurisdiction over claims against the federal government and its agencies, Section 2680(h) of the Act specifically excludes a list of intentional torts. Those torts specifically excluded are claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, and interference with contract rights. This section has been read to explicitly prohibit suits for intentional torts. See <u>Millbrook v. United States</u>, 569 U.S. 50, 52

---

[3] "The United States is the only proper defendant in a suit for personal injuries arising out of the negligence of Federal employees. Individual agencies . . . may not be sued in their own name in such a case." <u>Quoting</u> <u>Dilg v. United States Postal Service</u>, 635 F. Supp. 406, 407 (D.N.J. 1986). The Court will, accordingly, treat the claims asserted against the United States Post Office as though they were asserted against the United States.

(2013); <u>Prybyszewski v. Philadelphia</u>, Civil Action No. 89-7024, 1990 U.S. Dist. LEXIS 354, at *7 (E.D. Pa. Jan. 16, 1990) (dismissing Plaintiff's slander and intentional infliction of emotional distress claims under FTCA).

Plaintiff's claims against the Federal Defendants for malicious prosecution, slander and filing false police reports with law enforcement must be dismissed pursuant to Section 2680(h) of the FTCA, as the United States has not waived its sovereign immunity with respect to intentional torts. Nevertheless, even if these claims were not excluded, Plaintiff's FTCA claims against the United States Postal Service must fail because Plaintiff failed to exhaust the prerequisite administrative remedies.

28 U.S.C. § 2675(a) mandates that an FTCA action "shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency . . . ." Subsection (b) of 28 U.S.C. § 2675 further requires that an FTCA action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency . . . ." <u>Id.</u> "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States' consent to be sued, they are jurisdictional." <u>quoting United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). In other words, in order for this Court to have jurisdiction over any of Plaintiff's tort claims against the United States, Plaintiff must have previously exhausted the

14

administrative remedies by timely presenting an administrative claim containing a sum certain to the United States Postal Service.

In the present case, Plaintiff did submit a "Notice of Tort and Civil Rights Violation Claim," dated December 20, 2012, to the Northfield Post Office. However, this claim did not include a sum certain. In an attempt to explain or excuse this void, Plaintiff states that she did not include a sum certain because "at the time [,] the damages were accruing and no sum certain existed." The Court finds that this is precisely the same argument proffered by the plaintiff and rejected by the Court of Appeals in White-Squire v. United States Postal Serv., 592 F.3d 453, 458 (3d Cir. 2010), reasoning that "neither the FTCA nor the regulations promulgated thereunder contain an exception to this sum certain requirement when a claimant's damages continue to accrue through the two years following accrual of a claim." Id. The Third Circuit further stated that "[c]reating an exception to the sum certain requirement would constitute a judicial expansion of the waiver of sovereign immunity embodied in the FTCA, something which only Congress can effectuate." Id.; See also Suarez v. United States, 22 F.3d 1064, 1065-66 (11th Cir. 1994)(refusing to create an exception to the sum certain requirement where the claimant's damages were unliquidated); Kokotis v. United States Postal Serv., 223 F.3d 275, 279-80 (4th Cir. 2000)(declining to create an exception to the sum certain requirement because of the claimant's

ongoing treatment and uncertainty regarding the extent of her damages).

This Court is guided by the well-established precedent on this issue. Because of Plaintiff's failure to adhere to the jurisdictional obligation to present a claim for a sum certain to the United States Postal Service, this Court lacks jurisdiction over Plaintiff's FTCA tort claims against the United States Postal Service. Thus, Plaintiff's FTCA tort claims against the United States Post Service shall be dismissed.

## C. Plaintiff's Claims Against Municipal Defendants

Plaintiff seeks to hold Municipal Defendants, Northfield Police Department, Chief Robert James, Sgt. Scott Pollak and the City of Northfield liable for various constitutional and common law torts including malicious prosecution, slander and filing false police reports with law enforcement.

### 1. <u>Claims Against the Northfield Police Department</u>

First, Municipal Defendants aver that the Northfield Police Department cannot be sued in conjunction with the City of Northfield because the Police Department is merely an administrative arm of the City itself. [Docket Item 63-2 at 2.] <u>citing</u> <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

"In New Jersey a municipal police department is not an entity separate from the municipality, <u>N.J.S.A.</u> § 40A:14-118 (municipal police department is 'an executive and enforcement function of

16

municipal government'); therefore, the Northfield Police Department is not a proper defendant in this action." Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006); see also Padilla v. Twp. of Cherry Hill, 110 Fed. Appx. 272, 278 (3d Cir. 2004) (unpublished opinion); DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.")..
Because the Department "is not an entity separate from the municipality," Adams, 461 F. Supp. 2d at 266, it cannot be sued in conjunction with the municipality, irrespective of the nature of the plaintiff's claims. The Court will thus dismiss the Northfield Police Department from the suit.

### 2. Constitutional Claims Against Chief Robert James

Next, Municipal Defendants argue that Plaintiff's claims against Chief James should be dismissed as a matter of law because Plaintiff has not identified any "personal involvement" rising to a constitutional violation that Chief James has had with her case. Plaintiff contends that Chief Robert James was the top supervisor of the Northfield Police Department during the time in question, yet "[Chief Robert James] did nothing to stop defendants from maliciously prosecuting plaintiff, nor to discipline them, especially Defendant Pollak." Plaintiff further argues that her action against Chief James "is based upon Respondeat Superior."

[Docket Item 69 at 1.]

"Both the NJCRA [New Jersey Civil Rights Act] and § 1983 premise liability [for supervisory liability] on personal involvement in the alleged misconduct, and neither allow claims premised solely on *respondeat superior*." quoting Baklayan v. Ortiz, 2012 U.S. Dist. LEXIS 48705, 2012 WL 1150842, at *6 (D.N.J. Apr. 5, 2012); see also Didiano v. Balicki, No. 10-4483, 2011 U.S. Dist. LEXIS 41785, 2011 WL 1466131, at *6 (D.N.J. Apr. 18, 2011) (stating that "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983" and holding that neither § 1983 nor the NJCRA "provide a remedy for alleged constitutional violations committed by the State of New Jersey" because the state and a state prison are not "person[s]" within the meaning of the NJCRA.).

The Court cannot identify, nor has Plaintiff provided, any citations to any New Jersey court decisions that permit a finding of municipal liability based on *respondeat superior* for claims brought under the New Jersey Constitution and the NJCRA. Therefore, because *respondeat superior* liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that *respondeat superior* liability is not permitted for claims under the New Jersey Constitution and the NJCRA. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992)(holding that a "city is not vicariously liable under § 1983 for the constitutional torts of

its agents"); <u>Monell v. Dep't of Social Svcs. of City of New York</u>, 436 U.S. 658, 663 n.7 (1978)(upholding <u>Monroe v. Pape</u>, "insofar as it holds the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees"); <u>C.P. v. Twp. Of Piscataway Bd. of Educ.</u>, 293 N.J. Super. 421, 681 A.2d 105, 112 (N.J. Super. Ct. App. Div. 1996) ("a municipality will not be held liable for federal civil rights claims based solely on *respondeat superior*.").

In the present case, Plaintiff explicitly states that her action against Chief James "is based upon Respondeat Superior." [Docket Item 69 at 1.] Further, Plaintiff fails to allege any conduct that would allow a reasonable fact finder to conclude that Chief Robert James had actual knowledge or personal involvement in any violation of Plaintiff's constitutional rights. <u>See</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). Pursuant to the well-established case law on the issue of respondeat superior liability for claims under NJCRA [New Jersey Civil Rights Act] and § 1983, the Court will dismiss all state and federal constitutional claims against Chief Robert James.

### 3. <u>Constitutional Claims Against the City of Northfield</u>

Municipal Defendants argue that all of Plaintiff's

constitutional claims against the City of Northfield should be
dismissed because Plaintiff "has not plead any specific challenged
policy; nor has she set forth any case that Northfield had any
policy or custom which was the moving force in the alleged
deprivation of her constitutional rights." [Docket Item 62-2 at 3-
5.] In response to these assertions, Plaintiff argues that the
City of Northfield "maintained an indirect bias against any non-
resident who appear[ed] to be very poor and homeless. . ." [Docket
Item 69 at 4.] Plaintiff further argues that the City of
Northfield should also be held liable for their failure to train
their policeman as to "how to deal with homeless folks." Id. The
Court will address Plaintiff's two-fold argument on this issue
separately.

### i. Alleged Custom of Discriminating Against Poor/Homeless

In Monell, the Supreme Court established the rule for
imposing liability against a municipality under § 1983. The Court
held:

> "[A] local government may not be sued under § 1983
> for an injury inflicted solely by its employees or
> agents. Instead, it is when execution of a
> government's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may
> fairly be said to represent official policy,
> inflicts the injury that the government as an
> entity is responsible under § 1983."

Monell v. Dep't of Soc. Servs., 436 U.S. 658(1978).

To prevail on a Monell claim asserting municipal liability, a
plaintiff must first establish that the municipality had a policy

or custom that contributed to the deprivation of her constitutional rights. See McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (recognizing that there is a "two-path track to municipal liability under § 1983," either through government policy or custom); Mattern v. City of Sea Isle, 131 F. Supp. 3d 305, 318 (D.N.J. 2015). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict [sic]." Andrews v. City of Philadelphia, 895 F. 2d 1469, 1480 (3d Cir. 1990) (citation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 698).

Once a policy or custom has been shown to exist, it must be shown that the allegedly unconstitutional conduct causally resulted from that policy or custom. Lapella v. City of Atlantic City, No. 10-2454, 2012 U.S. Dist. LEXIS 100327, 2012 WL 2952411, at *4 (D.N.J. July 18, 2012).

In Pembaur v. City of Cincinnati, the Supreme Court held that, for purposes of section 1983, a single decision by a final policymaker could, under appropriate circumstances, establish municipal liability. 475 U.S. 469 (1986). Moreover, the United States Court of Appeals for the Third Circuit has instructed that "a plaintiff must show that an official who has the power to make

policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)(citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)); accord Woodwind Estates, Ltd. v. W.J. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). "In order to identify who has policymaking responsibility, 'a court must determine which official has final, unreviewable discretion to make a decision or take an action.'" Bielevicz, 915 F.2d at 850 (quoting Andrews, 895 F.2d at 1481); accord Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 269 n. 16 (3d Cir. 1995). This determination is based upon state law. See City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988); Andrews, 895 F.2d at 1481.

In New Jersey, the head of police acts pursuant to the policies promulgated by the "appropriate authority," which is defined by statute as "the mayor, manager, or such other appropriate executive or administrative officer, such as a full-time director of public safety . . . ." See N.J.S.A. 40A:14-118; Santiago v. City of Vineland, 107 F. Supp. 2d 512, 540 (D.N.J. 2000).

In the present case, the Court finds that Plaintiff arguably identifies an alleged custom of discrimination against poor and homeless people maintained by the City of Northfield. To support this argument, Plaintiff directs the Court's attention to the incidents that took place on September 21, 2012, arguing that

Defendant Pollak's decision to drop her off in Pleasantville, which she characterizes as "a community full of hard drug users, drug addicts, welfare mothers, felons, thieves, racial bigots, etc., a dangerous place for a White woman," was meant to send her a message that "you don't belong in upper middle class towns – you belong with the other decadent members of society![sic]" [Docket Item 69 at 4.] Though Plaintiff identifies an alleged custom of arguably unlawful discrimination against the poor or homeless population, the Court finds that Plaintiff fails to produce any evidence to show that a City of Northfield official who had the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom of discrimination against the poor or homeless population. Bielevicz, 915 F.2d at 850. Further, to the extent that Plaintiff avers that Defendant Pollak or Chief James were responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom of discrimination, the Court rejects this argument because Plaintiff has failed to produce any evidence in the summary judgment record which could lead a reasonable factfinder to conclude that Defendant Pollak or Chief James was a final policymaker for the City of Northfield. See Santiago, supra, 107 F. Supp. 2d at 540(dismissing plaintiff's racial discrimination claims under § 1983 claims because plaintiff failed to produce evidence that the Chief of Police was a final policy maker for the City of Vineland).

## ii. **Failure to Train**

Where the plaintiff alleges that the municipality failed to train law enforcement personnel, it may be held liable "if the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come in contact." Id. (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). To succeed on such a claim, a plaintiff must (1) identify the deficiency in training, (2) prove that the deficiency caused the constitutional violation, and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality. Malignaggi v. County of Gloucester, 855 F. Supp. 74, 77 (D.N.J. 1994). While a claim asserting municipal liability under Monell is ordinarily established by showing a pattern of constitutional violations, see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-407 (1997), the Supreme Court has recognized that where a violation of federal rights is a "highly predictable consequence" of an inadequate municipal policy or custom in a situation that is likely to recur, municipal liability may attach upon a single application of that custom. Id. at 409-10 (citing Canton, 489 U.S. at 390); see also Connick v. Thompson, 563 U.S. 51 (2011) (a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious"). The Third Circuit has applied this "single-incident liability" theory to failure-to-train claims, but has recognized that it also applies "to other claims of

[municipal] liability through inaction." <u>Berg v. Cnty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000). To find deliberate indifference from a single-incident violation, the risk of Plaintiff's injury must be a "highly predictable consequence" of the City of Northfield's failure to provide training as to how to encounter the poor/homeless population as a part of training for its police officers. <u>Brown</u>, <u>supra</u>, 520 U.S. at 403-407.

The Court finds that, at best, Plaintiff's failure-to-train claim is of the "single-incident liability" theory, as Plaintiff fails to produce evidence of a pattern of alleged constitutional violations involving the Northfield Police Department and the poor/homeless population. Moreover, the Court finds that Plaintiff fails to allege facts that would allow a reasonable fact finder to find that Plaintiff's injury was a "highly predictable consequence" of the City of Northfield's failure to provide training as to how to encounter the poor or homeless population. In fact, Plaintiff's Complaint does not mention a failure to train at all.[4] [<u>See</u> Docket Item 1.] The only mention of a failure to train is in Plaintiff's Response Brief, wherein Plaintiff states that, "a look at Defendant Pollak's training record shows nothing of how to deal with homeless folks in general." [Docket Item 69 at 4.] The Court finds that this is insufficient to permit the inference of "deliberate indifference" from a single-incident violation for the

---

[4] "Stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007).

purposes of a § 1983 claim for failure to train. See Moriarty v. DiBuonaventura, Civil Action No. 14-cv-2492 (JBS/AMD), 2014 U.S. Dist. LEXIS 104361, at *25 (D.N.J. July 30, 2014); but see Thomas v. Cumberland Cty., 749 F.3d 217, 225 (3d Cir. 2014)(reversing the grant of defendant's motion for summary judgment as to plaintiff's § 1983 claims against County where plaintiff produced evidence that fights regularly occurred in the prison and expert opinion evidence that the failure to provide conflict de-escalation and intervention training was a careless and dangerous practice not aligned with prevailing standards). Moreover, there are no facts in the Complaint or the entire record to suggest that Defendant Pollak's actions were the result of a lack of training, as opposed to the Defendant Pollak's individual actions.

For the reasons listed above, the constitutional claims against the City of Northfield will be dismissed.

### 4. Constitutional Claims Against Defendant Pollak

Plaintiff appears to bring two § 1983 claims against Defendant Pollak for a variety of alleged Fourth Amendment violations related to the events that took place on September 21, 2012. [Docket Items 1, 69.] Specifically, it appears that the Plaintiff seeks to hold Defendant Pollak liable for malicious prosecution, based on his role in the aforementioned incident at the Northfield Post Office that ultimately led to Plaintiff being convicted of Defiant Trespass. [Docket Item 1, ¶ 23.] It also appears that Plaintiff seeks to hold Defendant Pollak liable for

26

allegedly "kidnapping" Plaintiff by "lock[ing] Plaintiff in the back of [Defendant Pollack's] squad car" and dropping her off at an undesired location. [Docket Item 1, ¶17.] Municipal Defendants principally contend that Plaintiff's constitutional claims against Defendant Pollack must fail because 1) Plaintiff has not suffered a sufficient deprivation of liberty to establish a § 1983 malicious prosecution action; and, 2) Defendant Pollak is entitled to qualified immunity. [Docket Item 62-2 at 6-10.]

### i. **Plaintiff's § 1983 Malicious prosecution Claim**

The Court notes that Plaintiff's § 1983 malicious prosecution claim against Defendant Pollak must fail for the same reasons that Plaintiff's § 1983 malicious prosecution claim against Federal Defendants fails – Plaintiff remains convicted of one of the two crimes in which she was charged. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)(imposing a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence); Deemer v. Beard, 557 F. App'x 162, 166 (3d Cir. 2014). Thus, Plaintiff's § 1983 malicious prosecution claim against Defendant Pollak must be dismissed.

The Court will now turn its attention to whether Defendant Pollack is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claim.

### ii. **Qualified Immunity**

The doctrine of qualified immunity "balances two important interests — the need to hold public officials accountable when

they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Under this doctrine, government officials are immune from liability for civil damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). The doctrine "gives ample room for mistaken judgments" and "protect[s] all but the plainly incompetent or those who knowingly violate the law." See Kelly, 622 F.3d at 254 (internal quotation marks and citations omitted). Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." Butz v. Economou, 438 U.S. 478, 506-07 (1978). In each case, the government's interests must be balanced against the citizens' interest in vindicating their constitutional rights, as well as the public interest in holding officials accountable "when they exercise power irresponsibly." Pearson, 555 U.S. at 231.

The qualified immunity defense is traditionally analyzed in two steps. First, the court must decide whether the facts alleged, taken in a light most favorable to the plaintiff, make out the violation of a constitutional right. Saucier v. Katz, 533 U.S. 194 (2001). Next, the court must examine whether the right at issue was "clearly established" at the time of the challenged conduct.

To be "clearly established," a right must be sufficiently clear such that a reasonable official would have known that his conduct was unlawful. <u>Reichle v. Howards</u>, 566 U.S. 658 (2012). More recently, the Supreme Court emphasized again that while a case directly on point is not required to show that a right was "clearly established," "'existing precedent must have placed the statutory or constitutional question beyond debate.'" <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015)(citation omitted). The two prongs to the qualified immunity inquiry need not be analyzed in sequential order; courts have discretion to decide which of the two prongs to tackle first. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011); <u>Pearson</u>, 555 U.S. at 236.

At summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962)(*per curiam*); <u>Saucier</u>, 533 U.S. at 201. "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." <u>Scott</u>, 550 U.S. at 378. In other words, the inquiry is the following: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right", and that the right was clearly established? <u>Saucier</u>, 533 U.S. at 201.

Although the question of qualified immunity is generally a question of law, "a genuine issue of material fact will preclude

summary judgment on qualified immunity." <u>Giles v. Kearney</u>, 571
F.3d 318, 326 (3d Cir. 2009); <u>see</u> <u>also</u> <u>Curley v. Klem</u>, 298 F.3d
271, 278 (3d Cir. 2002) (noting that "a decision on qualified
immunity will be premature when there are unresolved disputes of
historical fact relevant to the immunity analysis."). The court
must deny summary judgment if, on the plaintiff's version of the
facts, defendants violated the plaintiff's clearly established
constitutional rights. <u>Giles</u>, 571 F.3d at 327 (finding that the
district court was wrong to dismiss Eighth Amendment claims on
qualified immunity grounds because there was a factual dispute as
to whether plaintiff had ceased resisting when he was kicked by
officers, and that the court "must accept [the plaintiff's]
version of the facts.").

### iii. Fourth Amendment – Reasonableness of the Seizure

To determine the reasonableness of a seizure, the court asks
whether the officer's conduct was "objectively reasonable" in
light of the totality of the circumstances, without regard to the
underlying intent or motivation. <u>Graham</u>, 490 U.S. at 397 (citing
<u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968)); <u>Kopec v. Tate</u>, 361 F.3d
772, 776 (3d Cir. 2004). The "objective reasonableness" inquiry
requires an examination of the "facts and circumstances of each
particular case, including the severity of the crime at issue,
whether the suspect poses an immediate threat to the safety of the
officers or others, and whether he is actively resisting arrest or
attempting to evade arrest by flight." <u>Graham v. Connor</u>, 490 U.S.

386 (1989). Additional factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004)(quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)). The Court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." Id.; see also Kopec, 361 F.3d at 777.

According to Plaintiff, following her release from the Northfield Police Department on September 12, 2012, she decided to lay down in a Northfield public park. [Docket Item 1 at ¶15.] Plaintiff was not blocking any bike path or causing any other disturbance. [Docket Item 69 at 2.] Nevertheless, at approximately 2:17 PM, dispatch received a call regarding a person sleeping along the Northfield bike path. [Docket Item 62-1 at ¶ 13.] Evidently, Plaintiff was thought to be ill or dead. (Id.) Defendant Pollak responded to this call and went to the scene to find Plaintiff sleeping along the bike path. (Id. at ¶ 18.) Defendant Pollak did not want Plaintiff to remain on the bike path. (Id. at ¶ 20.) When Plaintiff started to walk away, Defendant Pollak asked where she going. [Docket Item 1 at ¶16.] Plaintiff informed Defendant Pollack that she was walking to Shore

31

Road in Northfield in order to take the bus to Somers Point. (Id.)
Defendant Pollak offered Plaintiff a ride. However, according to
Plaintiff, once Plaintiff entered Defendant Pollack's patrol
vehicle, Defendant Pollak locked the car door and drove Plaintiff
to a Pleasantville bus terminal, as opposed to the Shore Road bus
stop. (Id. at ¶17.) Plaintiff tried to open the door of the
vehicle and banged on the glass of the windows of the vehicle
while insisting that she did not want to go to Pleasantville.
(Id.) Once at the Pleasantville Bus Terminal, Plaintiff refused to
exit Pollak's patrol car. [Docket Item 62-1 at ¶ 28.) Plaintiff
alleges that Defendant Pollak said that he would "rip her" from
the vehicle, but Plaintiff was never physically removed from the
vehicle. [Docket Item 1 at ¶ 19.] Plaintiff demanded that she be
taken back to Northfield, and Defendant Pollak refused. [Docket
Item 1 at ¶ 17.] According to the Detail for Call Service, the
entire incident, from the time of Pollak's response to the call at
2:20 PM, to clearing the call at the Pleasantville Bus Terminal at
2:33 PM, lasted only thirteen minutes. [Docket Item 63-5 at 17.]
Essentially, Plaintiff argues that Defendant Pollack's decision to
drive her to the bus in Pleasantville, as opposed to the bus stop
for Somers Point where she states that she wanted to go,
constitutes an unreasonable seizure of her person.

The Court rejects this argument. The Court finds that,
considering totality of the circumstances, Defendant Pollak's
conduct was objectively reasonable. This is not a case where

Plaintiff is alleging that the officer used excessive force. But see Marshall v. Keansburg Borough, No. 13-533, 2013 U.S. Dist. LEXIS 164968, 2013 WL 6095475, at *7 (D.N.J. Nov. 20, 2013) ("[N]o reasonable officer in the Defendant Officers' positions would have believed that throwing Plaintiff into their police vehicle, kicking Plaintiff's legs out from him, tackling Plaintiff to the ground, kneeing Plaintiff in his ribs and back, and choking Plaintiff was a lawful, reasonable amount of force to use under the circumstances."); Troso v. City of Atl. City, No. 10-1566, 2013 U.S. Dist. LEXIS 44460, 2013 WL 1314738, at *9 (D.N.J. Mar. 28, 2013) (finding that slamming plaintiff against a police car, and "pummeling" him in the head, neck, and shoulder area by the officers' fist and arms was objectively unreasonable); Brown v. Camden Cty. Counsel, No. 06-6095, 2007 U.S. Dist. LEXIS 8351, 2007 WL 433326, at *3 (D.N.J. Feb. 2, 2007) (holding that plaintiff may be able to establish that defendant is liable for using excessive force in violation of the Fourth Amendment where he asserts that defendant savagely beat plaintiff, even though plaintiff did not possess a weapon, resist arrest, or attempt to flee). Plaintiff was not arrested, nor was she assaulted in any manner. Rather, this is a case where, according to Plaintiff, Defendant Pollak merely offered to give Plaintiff a ride to one location, yet took Plaintiff to another location, another bus stop that would allow Plaintiff to reach her ultimate destination. The Court notes that Plaintiff stated that she initially "wanted to go to Shore Road to

33

get the (507) bus to Somers Point." [Docket Item 1 at ¶16.]
However, Plaintiff was observed hitchhiking on Shore Road two
hours prior. [Docket Item 63-3 at 15.] Thus, the Court finds that
it was objectively reasonable for Defendant Pollak to drive
Plaintiff to another bus stop that would allow Plaintiff to reach
her ultimate destination, without placing Plaintiff in the exact
location where the Northfield Police Department received
complaints of Plaintiff hitchhiking. The Court further notes that
the involved locations in Northfield and Pleasantville are within
a few minutes of each other.

For this reason, the Court finds that Defendant Pollak did
not violate an established Fourth Amendment right of Plaintiff's.
A reasonable police officer in Defendant Pollak's position could
believe, in the circumstances he confronted, that escorting
Plaintiff to the security of the Pleasantville bus station for her
intended trip to Somers Point, rather than to the Shore Road bus
stop, considering Plaintiff had earlier been hitchhiking along
Shore Road and sleeping along the bike path, was a reasonable
exercise of temporary police restraint to protect Plaintiff from
harm and to assist her planned journey. Therefore, the Court finds
that qualified immunity shields Defendant Pollak from liability
with respect to Plaintiff's Fourth Amendment claim. Such claim
against Defendant Pollak will be dismissed.

### 5. Common Law Tort Claims Against Municipal Defendants

Municipal Defendants initially averred that Plaintiff's state

law negligence claims (Slander, Filing False Police Reports, etc.) must be dismissed with prejudice because Plaintiff had not filed a timely New Jersey Tort Claims Act Notice. [Docket Item 63-2 at 5.] In response, Plaintiff submitted what she claims to be a timely filed Notice of Tort Claim, stamped with a "PAID" stamp indicating a date of December 21, 2012. [Docket Item 69 at 5.]

When it enacted N.J.S.A. 59:8-8 (the New Jersey Tort Claims Act), the New Jersey Legislature imposed a strict constraint on public entity liability. Jones v. Morey's Pier, Inc., 230 N.J. 142, 154 (2017). That provision mandates that "[a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented . . . not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8. If notice is not timely served in accordance with the statute, "[t]he claimant shall be forever barred from recovering against a public entity." See D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134, 61 A.3d 906 (2013)(explaining consequences of party's failure to meet ninety-day deadline); Rogers v. Cape May Cty. Office of Pub. Defs., 208 N.J. 414, 420, 31 A.3d 934 (2011) (noting that Tort Claims Act establishes procedures for bringing claims, which "include filing of a timely notice").

Although the Court is skeptical as to the authenticity of Plaintiff's New Jersey Tort Claims Act Notice, the Court declines to speculate in that regard. Rather, the Court assumes that the document stamped "PAID" is authentic, and the Court simply finds

that Plaintiff's purported Notice of Tort Claim was not timely. The alleged torts took place on Friday, September 21, 2012, yet the Notice of Tort Claim that Plaintiff produced is dated for Friday, December 21, 2012, ninety-one days following the accrual of the cause of action. Additionally, Plaintiff does not claim that any of the few exceptions to the ninety day time limit are applicable. See N.J.S.A. 59:8-9 (providing exception to the ninety-day time limit if extraordinary circumstances are present); Beauchamp v. Amedio, 164 N.J. 111, 117 (2000)(recognizing exceptions where "the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible").

For this reason, the Court finds that Plaintiff's state law claims are barred by the New Jersey Tort Claims Act due to untimeliness. Such will be dismissed.

**IV. CONCLUSION**

For the aforementioned reasons, Federal Defendants' motion for summary judgment will be granted. Additionally, Municipal Defendants' motion for summary judgment will be granted. An appropriate order follows.


**October 25, 2017**                              **s/ Jerome B. Simandle**
          Date                                     JEROME B. SIMANDLE
                                                   U.S. District Judge